UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
NORTHERN DIVISION

**LORA L. ROSENCRANS**                                                                 **PLAINTIFF**

**V.**                          **NO. 3:19CV00345-JTR**

**ANDREW SAUL,**
**Commissioner of Social Security Administration**[1]                **DEFENDANT**

## ORDER

### I.   Introduction:

Plaintiff, Lora L. Rosencrans ("Rosencrans"), applied for disability benefits on February 17, 2017, alleging disability beginning on July 16, 2014. (Tr. at 89). After conducting a hearing, the Administrative Law Judge ("ALJ") denied her application on March 8, 2019. (Tr. at 100). The Appeals Council denied her request for review, making the ALJ's denial of Rosencrans's application for benefits the final decision of the Commissioner. (Tr. at 1).

For the reasons stated below, the Court[2] reverses the ALJ's decision and remands for further review.

### II.   The Commissioner's Decision:

The ALJ found that Rosencrans had not engaged in substantial gainful activity

---

[1] On June 6, 2019, the United States Senate confirmed Mr. Saul's nomination to lead the Social Security Administration. Pursuant to Fed. R. Civ. P. 25(d), Mr. Saul is automatically substituted as the Defendant.

[2] The parties have consented in writing to the jurisdiction of a United States Magistrate Judge.

since July 16, 2014, the alleged onset date. (Tr. at 92). At Step Two, the ALJ found that Rosencrans had the following severe impairments: degenerative disc disease, dermatitis, depression, and somatic symptom disorder. *Id*.

After finding that Rosencrans's impairments did not meet or equal a listed impairment (Tr. at 92), the ALJ determined that Rosencrans had the RFC to perform work at the sedentary exertional level, except that: (1) she could only occasionally finger, handle, stoop, crouch, crawl, and kneel; (2) she could perform tasks where interpersonal contact is incidental to the work performed, requiring a limited degree of interaction such as meeting and greeting the public, answering simple questions, accepting payment, and making change; (3) she could understand, remember, and carry out tasks learned by demonstration or repetition within 30 days, with few variables and little judgment required; and (4) she would require simple, direct, and concrete supervision. (Tr. at 93)

The ALJ found that, based on Rosencrans's RFC, and testimony from the VE, she was unable to perform any of her past relevant work. (Tr. at 99). Relying upon the testimony of the VE, the ALJ found that, based on Rosencrans's age, education, work experience and RFC, jobs existed in significant numbers in the national economy that she could perform, including positions as a call out operator and a surveillance system monitor. (Tr. at 100). Thus, the ALJ concluded that Rosencrans

was not disabled. *Id.*

### III. Discussion:

    A. Standard of Review

The Court's function on review is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether it is based on legal error. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015); *see also* 42 U.S.C. § 405(g). While "substantial evidence" is that which a reasonable mind might accept as adequate to support a conclusion, "substantial evidence on the record as a whole" requires a court to engage in a more scrutinizing analysis:

> "[O]ur review is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision; we also take into account whatever in the record fairly detracts from that decision." Reversal is not warranted, however, "merely because substantial evidence would have supported an opposite decision."

*Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir. 2005) (citations omitted).

The United States Supreme Court recently held that "whatever the meaning of 'substantial' is in other contexts, the threshold for such evidentiary sufficiency [in Social Security Disability cases] is not high. Substantial evidence…is more than a mere scintilla. It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).

It is not the task of this Court to review the evidence and make an independent decision. Neither is it to reverse the decision of the ALJ because there is evidence in the record which contradicts his findings. The test is whether there is substantial evidence in the record as a whole which supports the decision of the ALJ. *Miller*, 784 F.3d. at 477.

B. Rosencrans's Arguments on Appeal

Rosencrans contends that substantial evidence does not support the ALJ's decision to deny benefits. She argues that the ALJ erred at Step Three by not analyzing medical equivalence and that the surveillance system monitor job identified by the VE outstripped her abilities. The Court finds support for Rosencrans's first argument.

Rosencrans suffered from a perplexing skin condition with a psychological component. She had Morgellon's Disease,[3] and she felt hopeless because of years of incorrect diagnoses and failed treatments. (Tr. at 604, 628). She explained to her doctors the feeling that things were crawling out of her skin, and she presented with body-wide blisters and sores. (Tr. at 604-605, 703). Her mental health therapist said

---

[3] Morgellon's disease is an uncommon, poorly understood condition characterized by small fibers or other particles emerging from skin sores. People with this condition often report feeling as if something were crawling on or stinging their skin. Some doctors recognize the condition as a delusional infestation and treat it with cognitive behavioral therapy, antidepressants, antipsychotic drugs and counseling. Others think the symptoms are related to an infectious process in skin cells. Further study is needed. *https://www.mayoclinic.org/morgellons-disease/art-20044996*

that Morgellon's Disease was a major trigger for depression and anxiety. (Tr. at 620). Rosencrans's doctors noted that she fixated overtly on her symptoms, and her illness interfered with concentration. (Tr. at 113). She was treated with both medical and psychiatric medications. (Tr. at 504-532). In October 2018, Rosencrans's therapist concluded that, owing to mental and physical impairments, she would not be able to meet the mental demands of competitive work. (Tr. at 806-809).

Rosencrans argues that the ALJ erred at Step Three, in his evaluation of the Adult Listing of Impairments ("Listings"). The Listings define impairments that would prevent an adult, regardless of his age, education, or work experience, from performing any gainful activity, not just "substantial gainful activity." *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990). If an adult is not actually working and his impairment matches or is equivalent to a listed impairment, he is presumed unable to work and is awarded benefits without a determination whether he actually can perform his own prior work or other work. *Id.*

An ALJ must proceed beyond naming the relevant Listing; the ALJ must explain why the claimant does not medically equal the relevant Listing. *See Hesseltine v. Colvin*, 800 F.3d 461, 466 (8th Cir. 2015) (when the ALJ concludes that the impairment does not medically equal a listing, he or she must provide reasons for that conclusion, otherwise there is insufficient evidence to support said

conclusion); *Zuhlke v. Berryhill*, 2019 U.S. Dist. LEXIS 127265 n. 5 (D. Neb. July 31, 2019)(reversing for failure to conduct an equivalence analysis); *Mann v. Colvin*, 100 F.Supp.3d 719-720 (N.D. Iowa 2015)(reversing for inadequate Listings discussion, failure to discuss equivalence).

Rosencrans points out that the ALJ's discussion at Step Three was cursory, at best. He only named Listing 8.05 for Dermatitis. (Tr. at 92). He did not explain the indicia required to meet Listing 8.05, and he did not even mention whether he considered medical equivalence (he did not use the word equivalence even once). *Id*. Per the Social Security regulations, the medical equivalence standard requires an analysis of whether symptoms, signs, and laboratory findings show that a claimant's impairment is at least equal in severity and duration to the criteria of any Listing. 20 C.F.R. § 404.1526(a); *Davis v. Astrue*, 545 F.Supp.2d 973, 985 (D. Neb. 2008). Medical equivalence evaluations exist for cases when an impairment does not exactly match a Listing's definition (the Adult Listing of Impairments includes over 100 illnesses, well short of the universe of possible impairments a claimant may have: in the event a named impairment is not defined in the Listings, an ALJ must consider medical equivalence.) *Id*. An ALJ must carry forward with this equivalence analysis, considering clinical findings and relevant medical opinions and giving good reasons for his determination, for the Court to be able to determine if the

decision is based on substantial evidence. *Id.*; *See Scott v. Astrue*, 529 F.3d 818, 822 (8th Cir. 2008) (when ALJ fails to support a finding that the claimant did not meet or equal a Listing and when the record contains inconsistencies on the issue, "we are unable to determine whether substantial evidence supports the ALJ's finding that [the claimant's] impairments did not meet or medically equal [the] Listing"); *see Chunn v. Barnhart*, 397 F.3d 667, 672 (8th Cir. 2005) (remanding because the ALJ's factual findings at Step Three were insufficient for meaningful appellate review).

Understandably, because it is so rare and misunderstood, Morgellon's disease is not defined in the Listings, which meant that the ALJ had to proceed to the medical equivalence analysis; he did not. Accordingly, reversal is warranted.

## IV. Conclusion:

It is not the task of this Court to review the evidence and make an independent decision. Neither is it to reverse the decision of the ALJ because there is evidence in the record which contradicts his findings. The test is whether there is substantial evidence in the record as a whole which supports the decision of the ALJ. *Miller*, 784 F.3d at 477). The Court has reviewed the entire record, including the briefs, the ALJ's decision, and the transcript of the hearing. The Court finds that the ALJ's decision is not supported by substantial evidence, because the ALJ did not conduct a proper analysis at Step Three.

IT IS THEREFORE ORDERED that the final decision of the Commissioner is REVERSED and the case is REMANDED for further review.

DATED this 23rd day of November, 2020.

_____
UNITED STATES MAGISTRATE JUDGE